United States District Court
for the
Northern District of Georgia
Atlanta Division

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
AUG 28 2025
KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

Tracey Lampley
**Plaintiff,**

v                    Case Number: 1:24-cv-4878-MCB

State of Ohio - Ohio ~~CSEA~~ child Support Enforcement Agency
**Defendant,**

Ohio Highway Patrol

Ohio Civil Rights Commission
OCRC


Amended complaint

Adding Ohio child Support
Enforcement Agency
Adding charge of harassment
Seeking injunctive relief against
ongoing and future harassment.

The Ohio Civil Rights Commission violates Ohio Revised Code Section 4112.051 by conducting a fact-finding investigation regarding the Plaintiff, Tracey Lampley, decades after the termination of her employment. Specifically, the OCRC exceeded its authority and violated the statute of limitations for employment discrimination claims outlined in Ohio law, which is two years. The agency also violates Title VII of the Civil Rights Act of 1964 when it failed to properly investigate the agencies harassing and retaliating against the Plaintiff, Tracey Lampley. Title VII also included a hostile work environment. Instead, the agency's perpetual investigation of the Plaintiff instituted perpetual prejudice against Plaintiff with relatives, friends, neighbors, schools, potential employers, literary agents, book publishers, and boyfriends. The ongoing fact-finding investigation prevents Plaintiff from securing an attorney. For instance, Cincinnati Attorney, David Eberly would not take the case because of the ongoing fact-finding investigation. In 2012, Tracey Lampley attempted to withdraw any and all charges from employers at the Ohio Civil Rights Commission. The agency responded by accusing the Plaintiff of aggravated menacing. Since Plaintiff was well aware that cameras were in the offices, she requested that the Ohio Highway Patrol investigators check them because Plaintiff never got loud or aggressive. If Plaintiff had menaced anyone, workers would have summoned the security located in the building as well as the Dayton Police Department. Ohio Highway Patrol investigators convinced Plaintiff's now-deceased aunt to have Plaintiff committed for 8 days. The University of Cincinnati Hospital refused to release Plaintiff unless Plaintiff submitted to medication. Plaintiff was traumatized and fled Ohio for good. However, the aggravated menacing charges prevented Plaintiff from securing employment and an apartment. Plaintiff alerted family members including the aunt of how the trumped up charges interfered with her life. Plaintiff resided with her sister in Atlanta. Eventually Plaintiff returned to Ohio to file for the expungement of those charges. But Plaintiff found the charges already expunged. The ordeal caused strife between Plaintiff, Plaintiff's aunt, Plaintiff's mother and at one time Plaintiff's daughter. In fact, Plaintiff has since cut ties with several family members who have recently assisted the state of Ohio in its harassment. *Plaintiff contacted Ohio Representative in 2018 who said employer needed additional information. In 2022 U.S. Senator Raphael Warnock declined to intervene. I am ongoing investigator*

The Ohio Highway Patrol violates Ohio Revised Code Section 4112.05 by conducting a fact-finding investigation regarding Plaintiff, Tracey Lampley, decades after termination of her employment. Investigators in the Ohio Highway Patrol are not permitted to investigate an employee. They are not permitted to threaten family members who refuse to participate or suggest that family members' lively hoods may be jeopardized if they fail to cooperate. Further, the Ohio Highway Patrol's mere suggestion of investigating Plaintiff to current and former neighbors prejudices her neighbors against her. Investigating Plaintiff for alleged prostitution because coworkers and supervisors joked about her being one does not justify Ohio Highway

Patrol investigators digging into Plaintiff's personal live to prove she was a prostitute to clear the state of Ohio of wrongdoing. After all, the best defense against slander is the truth. There never existed any truth in Plaintiff ever working as a prostitute. If Plaintiff had worked as a prostitute, it would be unlikely that her house would have nearly been foreclosed on prior to receiving approval for disability retirement. In 2006, the bank foreclosed on Plaintiff's home because the disability payments were not enough for Plaintiff to sustain living there. Specifically, the Ohio Highway Patrol exceeds its authority, abuses its power, and prejudices boyfriends against the Plaintiff, Tracey Lampley, when the agency investigated the former employee for alleged prostitution well after employee moved out of the state of Ohio. The agency's use of an illegal investigation to secure security codes to enter Plaintiff's home, access email, access school data endangers Plaintiff because she suffers from PTSD, anxiety, and depression.

The Ohio Child Support Enforcement Agency failed to comply with Ohio laws regarding COLA. In sixteen years of the Plaintiff receiving child support for her daughter, Asia Lavay Lampley, the Plaintiff *only* received one cost of living increase after Plaintiff made multiple attempts of securing them. Child support was initially set at $179/month despite the child's father being a college graduate and holding a full-time and part-time jobs. Eventually child's father worked as a full-time fire fighter, part-time state chaplain, and part-time adult education teacher but was only required to pay $400/month in child support. Father submitted an income tax worksheet, but Plaintiff was required to submit a signed tax return every time. OCSE was made aware of this but failed to correct the problem. OCSE refused to grant child support modifications after multiple requests. In one instance, child support payments were withheld from Plaintiff for five months despite payments being garnished from father's check. Child's father refused to inquire about checks not reaching his child. Plaintiff suffered a crisis. After five months of trying to retrieve the payments, Plaintiff contacted the Ombudsman and the Ohio representative. OCSE informed Plaintiff that they believed Plaintiff would have benefitted from a lump sum check. Plaintiff ceased requesting child support modifications despite knowledge of child's father obtaining raises and starting a business out of fear OCSE would continue withholding child support payments in retaliation.

The Ohio Public Employees Retirement System breached the contract of providing a yearly Cost of Living Adjustment of 3% for any disability retiree who filed for benefits prior to January 7, 2013. The Plaintiff received her first benefit April 1, 1998. Currently, OPERS should pay the Plaintiff $42,991.05 in income. Instead, OPERS pays the Plaintiff $33,049.92 in income. While Plaintiff understands that ERISA does not govern OPERS, Plaintiff needs the Court to see the pattern and practice of the state of Ohio's harassment and retaliation through its agencies.

The state of Ohio systemically victimized the Plaintiff for filing Title VII violation against it in 1997 when she filed an EEOC complaint and sued them in a court of law for wrongful termination, race discrimination, violation of ADA, sexual harassment, and hostile work environment. Plaintiff believes that the state of Ohio intimidated her attorney, Jeffrey Lurie because the court dismissed the case for statute of limitations. Until now, Plaintiff always believed that her attorney filed 40 days after she was wrongfully terminated. Plaintiff was under psychiatric care, and the state of Ohio terminated her for alleged refusal to return to work. The state of Ohio continues victimizing the Plaintiff to this day, and she felt she had no other recourse but to file suit pro se because the state of Ohio intimidated every attorney or law clinic the Plaintiff contacted.

## Remedy Sought

- Cease all investigations into Plaintiff's private and professional life, including all interactions with Plaintiff's family, friends, neighbors, potential literary agent/publisher, professors.
- Injunctive relief from Ohio Highway Patrol and any other agency or agent working on behalf of the state of Ohio from committing surveillance on Plaintiff.
- Injunctive relief from the state of Ohio and its agents and agencies from eavesdropping on Plaintiff's phone calls, intercepting emails, and hacking her personal cloud.
- OPERS pay corrected plus back pay plus 25% interest.
- 12 million dollars
- Through a reputable public relations firm of the Plaintiff's own choosing, the state of Ohio should rehabilitate Plaintiff's image that they worked so hard to needlessly destroy.

If the court holds the state of Ohio to this relief, I believe this remedy will allow me to move on with my life. I've suffered enormously. This ordeal has taken a physical, emotional and psychological toll on me. Although I've never smoked a day in my life, I am now battling lung cancer. I pray that the Court grant me the peace that the state of Ohio robbed me for decades.